T.C. Memo. 1998-324


UNITED STATES TAX COURT


JOHN ANDREW DORRIS AND DONNA L. DORRIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14522-96.                    Filed September 15, 1998.


John Andrew Dorris and Donna L. Dorris, pro se.

<u>Paul L. Dixon</u>, for respondent.


MEMORANDUM OPINION


PAJAK, <u>Special Trial Judge</u>:  This case was heard pursuant to
section 7443A(b)(3) of the Code and Rules 180, 181, and 182.  All
section references are to the Internal Revenue Code in effect for

the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined the following deficiencies in income tax and accuracy-related penalties:

| Year | Deficiency | Accuracy-related Penalty Sec. 6662 |
|------|------------|------------------------------------|
| 1991 | $1,545 | $309 |
| 1992 | 1,793 | 359 |

The issues for decision are: (1) Whether petitioners are entitled to charitable contribution deductions in the amounts of $16,176 and $17,940 for 1991 and 1992, respectively, and (2) whether petitioners are liable for accuracy-related penalties under section 6662(a) for the taxable years at issue.

Some of the facts have been stipulated and are so found. Petitioners resided in Reno, Nevada, at the time their petition was filed.

Petitioners, and a third person unrelated to the issues before us, incorporated Agape Assemblies (Agape) under the laws of Texas as a nonprofit organization in July 1986. During the taxable years at issue, petitioner John Andrew Dorris (petitioner) served as Agape's president.

Agape operated as a social ministry. The purpose for which Agape was organized was "to receive and maintain a fund or funds of real or personal property, or both, and, * * * to use and apply the whole or any part of the income therefrom and the

principal thereof exclusively for religious purposes either directly or by contributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code and its Regulations * * * ."  During the taxable years at issue, Agape was an organization described in sections 170(c)(2) and 501(c)(3) and listed in Publication 78.  Agape was located on property owned by Reverend Robert L. McWilliams (Reverend McWilliams) in Brazito, New Mexico.

During 1991 and 1992, petitioners had canceled checks and carbon copies of checks from their two personal checking accounts on which they left the payee lines blank (blank checks).  The blank checks were deposited into a bank account (TFC account) of Twenty-First Century Corporation (TFC) by Ms. Thelma Spiegel (Ms. Spiegel).  The record does not disclose the nature of TFC's trade or business.

Ms. Spiegel, inter alia, served as the bookkeeper for Agape during the taxable years at issue.  She also had the authority to make deposits to, and withdrawals from, the TFC account.  Ms. Spiegel was a member of Agape during the taxable years at issue.  Ms. Spiegel also collected and recorded the weekly contributions from Agape's congregation.  She deposited almost all of the contributions into the TFC account.  Agape did not have a checking account in its own name.

After Ms. Spiegel deposited the money, she issued a check to Reverend McWilliams in the same amount. Ms. Spiegel and Reverend McWilliams were the only two people who had signatory authority over the TFC account. Reverend McWilliams deposited the checks into his personal account. Reverend McWilliams never provided Agape with an accounting of how the funds were used.

Reverend McWilliams worked as Agape's minister. There was no employment contract. Reverend McWilliams was hired as a "private contractor". In addition to performing social work in Mexico and working with deprived and disadvantaged people, Reverend McWilliams performed baptisms and marriages. Reverend McWilliams was neither a member of Agape, nor was he on Agape's Board of Elders.

Reverend McWilliams was the president of TFC at the time TFC temporarily closed its business in December 1988. Reverend McWilliams also was in the business of providing food, shelter, and medical care to various persons in a religious communal group setting in exchange for payments. He reported profits from this business.

During the taxable years at issue, petitioners and their three children lived on the approximately 2-1/2 acre property owned by Reverend McWilliams. Situated on the property is an approximately 5,500 square foot building that served as living quarters. The building consists of two wings and has a common

area, common court yard, large kitchen, dining and living rooms, 11 bedrooms, 6 or 7 bathrooms, private quarters for Reverend McWilliams and his family, covered parking for 12 automobiles, and a trailer in the back. Petitioners occupied one room and their three children occupied another room. They shared a bathroom.

Petitioners made monthly rental payments to Reverend McWilliams. The rental payments covered room and board, utilities, and other living expenses. Petitioners claim they paid rent to Reverend McWilliams in the amount of $14,300 per year in 1991 and 1992 for these services. The canceled checks and carbon copies of checks placed in evidence do not add up to this amount for claimed rental payments for either year.

On Schedules A of their 1991 and 1992 Federal income tax returns, petitioners claimed deductions for charitable contributions in the amounts of $16,176.48 and $17,940.00, respectively.

Respondent disallowed the charitable contribution deductions for 1991 and 1992 because the contributions were not made to a qualified organization, because the contributions were made for the benefit of a specified individual, and because petitioners failed to establish that the amounts claimed were contributions and were paid. Respondent concedes that contributions that were

"to or for the use of" Agape were deductible under section 170(c).

Deductions are strictly a matter of legislative grace. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Petitioners must substantiate the claimed deductions. Hradesky v. Commissioner, 65 T.C. 87 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Section 170 allows as a deduction any charitable contribution actually paid during the taxable year. Sec. 170(a)(1); sec. 1.170A-1(a), Income Tax Regs. A taxpayer may claim a deduction for a charitable contribution only if the contribution is made "to or for the use of" a qualified organization. Sec. 170(c); Davis v. Commissioner, 495 U.S. 472, 478 (1990).

The issue we must decide is the factual question whether, as petitioners contend, petitioners contributed the amounts at issue to or for the use of Agape. If they did, they are entitled to deduct those amounts under section 170(c).

Petitioners introduced into evidence some canceled blank checks for 1991. We term these blank checks because for some reason unknown to petitioners, no payee is named. Because these canceled blank checks fail to list Agape as the donee, these checks do not establish that petitioners made donations deductible under section 170. Further, the blank checks were

deposited into the TFC account in the name of a company about which the record discloses almost nothing. We are not convinced that the blank checks were "to or for the use" of Agape. Davis v. Commissioner, supra. Petitioners also claim some carbon copies of blank checks are proof of other 1991 contributions to Agape, and for 1992, petitioners only have carbon copies of blank checks, which for the same reasons are not proof of contributions. We also note that even though we cannot rely on petitioners' alleged evidence, our computation of the amounts of canceled blank checks and blank carbon copies for 1991 ($7,105) and of the blank carbon copies for 1992 ($8,438) totals far less than the amounts of $16,176.48 and $17,940.00 claimed as contributions on petitioners' 1991 and 1992 returns, respectively.

At trial, we had reservations about Ms. Spiegel's testimony. With respect to donation ledgers, she stated that she wrote the numbers "On the date I received the money." Yet examination of these ledgers show they do not comport with the dates of the alleged contributions made on a number of occasions. Ms. Spiegel's testimony about cash contributions by petitioners was unsatisfactory.

The amounts petitioners claimed as charitable contributions to Agape in their returns for 1991 and 1992 are greater than the

total amounts listed in the respective donation ledgers. The record does not establish the reason for this difference.

We also find petitioner not credible. We are troubled by petitioner's testimony that although he was Agape's president and one of its incorporators, he had no knowledge of how much Agape paid Reverend McWilliams for his services, nor did he know whether or not Ms. Spiegel always deposited the contributions into the TFC account. Moreover, petitioner could not explain where the money went after petitioners gave it to Ms. Spiegel. Petitioner also had difficulty explaining why the payee lines were left blank.

On the basis of this record, we find that petitioners failed to establish that the amounts of the purported charitable contributions at issue were to or for the use of Agape within the meaning of section 170(c). Accordingly, respondent is sustained on this issue.

Finally, we must decide whether petitioners are liable for accuracy-related penalties in the amounts of $309 and $359 for 1991 and 1992, respectively. Section 6662(a) imposes an accuracy-related penalty in the amount of 20 percent of the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence is any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue laws. Sec. 6662(c);

sec. 1.6662-3(b)(1), Income Tax Regs. Moreover, negligence is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Disregard includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

Under section 6664(c), no penalty will be imposed with respect to any portion of any underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. This determination is based on all of the facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayers' effort to assess their proper tax liability for the years at issue. Sec. 1.6664-4(b)(1), Income Tax Regs.

On the record before us, we sustain respondent's determination of penalties under section 6662(a). Petitioners wrote checks for which they left the payee lines blank and claimed those purported contributions as charitable contribution deductions. Petitioners claimed deductions in the amounts of $16,176.48 and $17,940.00 for 1991 and 1992, respectively. However, the documents that petitioners provided to support their claimed deductions showed an amount less than that claimed.

Petitioners failed to offer any reasonable explanation or provide any credible evidence to substantiate the deductions.  In this regard, we find that petitioners' actions were not those of a reasonable and prudent person under the circumstances. Accordingly, we sustain respondent's determination on this issue.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.